UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JULIE A. SU, Acting Secretary
of Labor, U.S. Department of
Labor

   Petitioner,

v.

FORGE INDUSTRIAL STAFFING,
INC.,

   Respondent.
_____/

Hon. Paul L. Maloney
U.S. District Judge

Case No. 1:23-mc-066-PLM-PJG

## **REPORT AND RECOMMENDATION**

  This matter is before the Court on the Acting Secretary of the Department of Labor's (the Secretary) petition to enforce two administrative subpoenas *duces tecum* issued to Forge Industrial Staffing, Inc. (Forge). (ECF No. 1). Forge opposes the petition. (ECF No. 15). The Secretary is seeking records relating to the names and addresses of Forge's clients, as well as copies of its client contracts. (*See* ECF No. 1, PageID.3-4; Subpoena Attach. Doc. Req. 22-23, ECF No. 1-1, PageID.14).

  The undersigned judicial officer conducted a hearing on this matter at which the Secretary and Forge appeared through counsel. (Minutes, ECF No. 19). Having considered the parties' oral and written submissions, and for the reasons articulated herein, the undersigned recommends that the Secretary's petition be granted.

### Factual and Procedural Background

On March 21, 2023, the Wage and Hour Division of the U.S. Department of Labor (DOL) initiated an investigation of Forge to determine if it is covered by the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201, *et seq.*, and whether Forge is in compliance with that statute. (Uphold Decl. at ¶¶ 2-3, ECF No. 1-1, PageID.7). Forge is a staffing agency that provides workers to various clients in several states. (*Id.* at ¶¶ 5, 9, PageID.7-8).

Upon the initiation of the investigation, DOL served two subpoenas on Forge; one on its Michigan operations (Uphold Decl. at ¶ 6 and Exh. 1, ECF No. 1-1, PageID.8, 11-15) and the other on its Indiana operations (Hernandez Decl. at ¶ 6 and Exh. 1, ECF No. 1-2, PageID.20-21, 24-28). The subpoenas sought the same 26 categories of documents, only two of which are at issue here. The contested categories include: (1) "A complete listing of all client's names and addresses of the facilities for which Forge . . . provides labor on a day laborer, temporary labor, contract or permanent labor basis"; and (2) "[a] copy of all client contracts between Forge . . . and employer utilizing its services to provide labor on a day laborer, temporary labor, contract or permanent basis." (Michigan Subpoena, Attach. A, Doc. Req. 22-23, ECF No. 1-1, PageID.14; Indiana Subpoena, Attach. A, Doc. Req. 22-23, ECF No. 1-2, PageID.27). The return dates for each was March 28, 2023. (*Id.* at PageID.11, 24). The Secretary initiated this action due to Forge's failure to provide these documents. (Uphold Decl. at ¶ 8, PageID.8; Hernandez Decl. at ¶ 9, PageID.21; Russo Decl. at ¶¶ 8-9, ECF No. 3-1, PageID.58-59).

Petitioner filed the instant petition on June 8, 2023, seeking initially an order requiring Respondent to show cause why it failed to produce all the documents sought in the subpoenas. (ECF No. 1). The Court set this matter for hearing on July 17, 2023. (ECF No. 6). The Court thereafter granted the parties' joint motion to adjourn the hearing (ECF No. 7), and rescheduled it for August 28, 2023 (ECF No. 8).

On August 9, 2023, the parties filed a second joint motion to adjourn the hearing, seeking an opportunity to resolve the matter without judicial intervention. (ECF No. 9). The parties noted that they would file a status report no later than October 9, 2023, advising the Court of the status of that effort. (*Id.* at PageID.70). The Court granted that request. (ECF No. 10).

On October 6, 2023, the parties submitted a joint status report, advising the Court that their efforts were ongoing and that the Secretary wanted more time to review information obtained during interviews to determine whether additional information is needed. (ECF No. 11). The parties asked for a November 3 date to update the Court. (*Id.* at PageID.75). The Court granted that request. (ECF No. 12).

On October 30, 2023, the parties submitted a second joint status report, advising the Court that they had reached "an impasse" in their efforts to resolve the document dispute, and they asked the Court to set a briefing schedule and hearing. (ECF No. 13). The Court set a hearing date of December 5, 2023, with a commensurate briefing schedule. (ECF No. 14).

On November 14, 2023, Forge timely filed its response to the Secretary's petition. (ECF No. 15). The Secretary timely replied on November 28. (ECF No. 17). The Court conducted the hearing as scheduled. (Minutes, ECF No. 19). During the hearing, and after considering the parties' oral and written submissions, the undersigned judicial officer announced his intention to grant the petition, deferring the issue of fees and costs pending resolution of any appeal. (Hrg. Tr. at 42, 44, ECF No. 21, PageID.194, 196). The undersigned accepted Forge counsel's offer to extend the tolling agreement for the duration of the pending litigation and declined to further involve itself in that issue. (*Id.* at 3, 42, PageID.155, 194).

The undersigned has since determined that a more appropriate course of action is to issue a report and recommendation.[1] (*See* ECF No. 20). The undersigned directed the Clerk's Office to randomly assign a district judge to this case. (*Id.*). The Honorable Paul L. Maloney has been assigned.

## Analysis

The FLSA grants the Secretary the authority to issue administrative subpoenas for documents relating to its investigations. *See* 29 U.S.C. § 209. This Court has jurisdiction to enforce such subpoenas, and the failure to obey an order enforcing a subpoena is punishable by contempt. *See* 15 U.S.C. § 49.

The standards for the enforcement of an administrative subpoena are well established. "All a district court must do in deciding whether to enforce an administrative subpoena is (1) determine whether the administrative agency to

---

[1] In *Chao v. Potter*, a magistrate judge of this district entered an order, following the issuance of oral findings of fact and conclusions of law, granting the Secretary of Labor's petition to enforce an administrative subpoena. *See* Case No. 1:05-mc-0061, 2005 WL 4839145, at *1 (W.D. Mich. Aug. 10, 2005). That decision was affirmed by a district judge. *See* 2005 WL 4839145 at *4. Similarly, in *United States v. Mich. Dep't Comm. Health*, a magistrate judge issued an opinion and order enforcing an administrative subpoena. *See* Case No. 1:10-mc-0109, 2011 WL 2412602, at *14 (W.D. Mich. June 9, 2011). The question of whether the respective magistrate judge had authority to enforce the subpoena under 28 U.S.C. § 636 was not addressed in either of these cases, however. Following the hearing in this matter, the undersigned found cases indicating that a decision to enforce an agency's administrative subpoena is dispositive and, accordingly, should be handled by a magistrate judge through a report and recommendation. *See, e.g., Westlake Vinyls, Inc. v. Cooke*, Case No. 3:18-mc-0018, 2018 WL 4868993, at *1 (W.D. Ky Aug. 8, 2018); *EEOC v. Nestle Prepared Foods*, Case No. 5:11-mc-0358, 2012 WL 1888130, at *2 (E.D. Ky May 23, 2012). In an abundance of caution, the undersigned will follow the latter course of action.

which Congress has granted the subpoena power . . . has satisfied the statutory prerequisites to issuing and enforcing the subpoena, and (2) determine whether the agency has satisfied the judicially created standards for enforcing administrative subpoenas. *Doe v. United States*, 253 F.3d 256, 262 (6th Cir. 2001) (citing *United States v. Markwood*, 48 F.3d 969, 976-77 (6th Cir. 1995)). The Supreme Court advises that an administrative subpoena should be enforced provided it "is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant." *United States v. Morton Salt Co.*, 338 U.S. 632, 652-53 (1950). "In other words, the agency request must be reasonable." *Doe v. United States*, 253 F.3d at 263.

The applicable judicial criteria for the enforcement of an administrative subpoena is summarized in the following four requirements: (1) the subpoena must satisfy the terms of the authorizing statute, (2) the requested materials must be "relevant" to the agency's investigation, (3) the information sought must not already be in the possession of the agency, and (4) the enforcement of the subpoena must not constitute an abuse of judicial process. *See, e.g., Doe v. United States*, 253 F.3d at 265 (citing *Markwood*, 48 F.3d at 980)). The court's role in the enforcement of an administrative subpoena is limited. *Markwood*, 48 F.3d at 976. Accordingly, "while the court's function is 'neither minor nor ministerial,' the scope of the issues [that] may be litigated in an enforcement proceeding must be narrow, because of the important governmental interest in the expeditious investigation of possible

unlawful activity." *Id.* at 979 (quoting *FTC v. Texaco*, 555 F.2d 862, 872-73 (D.C. Cir. 1977) (en banc) (internal citation omitted)).

The Secretary bears the burden of demonstrating that it has satisfied the first three requirements. *Solis v. PulteGroup, Inc.*, Case No. 12-50286, 2013 WL 4482978, at *3 (E.D. Mich. Aug. 19, 2013). The burden then shifts to Forge to demonstrate that the enforcement of the subpoena would constitute an abuse of judicial process, meaning that the subpoena was issued for an improper purpose, "such as to harass or to put pressure on the respondent to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." *Id.* (citing *United States v. Will*, 671 F.2d 963, 967 (6th Cir. 1982); *United States v. Powell*, 379 U.S. 48, 58 (1964)). The affidavits of agency officials have been accepted as sufficient to establish a prima facie showing that the judicial requirements have been satisfied. *United States v.* Comley, 890 F.2d 539, 541 (1st Cir. 1989) (citing *United States v. Lawn Builders of New England, Inc.*, 856 F.2d 388, 391-92 (1st Cir. 1988); *Kerr v. United States*, 801 F.2d 1162, 1163-64 (9th Cir. 1986)).

    1.    *The Subpoenas Satisfy the Terms of the Authorizing Statute*

The two subpoenas were issued in conjunction with DOL's investigation of Forge's compliance with the FLSA. That statute gives the Secretary the authority to "investigate and gather data regarding the wages, hours, and other conditions and practices of employment in any industry subject to this chapter, and may enter and inspect such places and such records . . . necessary or appropriate to determine

whether any person has violated any provision of this chapter, or which may aid in the enforcement of the provisions of this chapter." 29 U.S.C. § 211(a).

Forge does not dispute that the Secretary has satisfied this requirement. (*See* Hrg Tr. at 12, ECF No. 164). Accordingly, and in light of the above, the undersigned finds that the first requirement for enforcement of the subpoenas has been established.

    2.    *The Information Sought is Relevant to the Secretary's Investigation*

The Secretary asserts that the information sought in the subpoenas is relevant to her investigation of Forge's compliance with the FLSA's provisions concerning minimum wage, overtime, child labor, and record keeping. (ECF No. 3, PageID.50). The Secretary notes that Forge provided all the documents requested in the subpoenas except for the listing of client's names and addresses and copies of contracts with those clients. (*Id.* at PageID.50-51). The Secretary argues that she needs the withheld information to, among other things, investigate potential child labor violations and to determine whether Forge's clients are "employers" under the FLSA. (*Id.* at PageID.51).[2]

---

[2] The Secretary notes that her enumeration of need is non-exhaustive. (ECF No. 3, PageID.51). During the December 5, 2023, hearing, counsel for the Secretary advised the Court that the Department of Labor is conducting a "full FLSA investigation including wage – minimum wage, overtime, and recordkeeping." (Hrg Tr. at 7, ECF No. 21, PageID.159).

Forge counters that the Secretary is offering "nothing more than the unsupported opinion that the requested information is relevant to a general FLSA 'compliance' investigation." (ECF No. 15, PageID.97). Forge further argues that the Secretary has not provided information to support "suspicions of violations at any particular Forge location, *or that is has uncovered any violations at all after several months of investigations.*" (*Id.*) (emphasis in original). Forge also complains that the Secretary has not explained why she needs the information at issue here. (*Id.*).

Forge is not entitled to the level of explanation it seeks. Relevance must be construed broadly. *See, e.g., Doe v. United States*, 253 F.3d at 266. Further, "[t]he relevance of the sought-after information is measured against the general purposes of the agency's investigation, which necessarily presupposes an inquiry into the permissible range of investigation under the statute." *In Re McVane*, 44 F.3d 1127, 1136 (2d Cir. 1995). This requirement is satisfied if the records are "relevant to any inquiry that the Secretary is authorized by law to undertake." *Dole v. Trinity Indus., Inc.*, 904 F.2d 867, 874 (3d Cir. 1990); *see also id.* (the scope of an administrative subpoena is not limited to a given complaint).

Moreover, Courts are to defer to the agency's assessment of relevancy, unless it is "obviously wrong." *NLRB v. American Medical Response, Inc.*, 438 F.3d 188, 193 (2d Cir. 2006); *see also Resolution Trust Corp. v. Walde*, 18 F.3d 943, 946 (D.C. Cir. 1994) ("[W]e defer to the agency's appraisal of relevancy, which 'must be accepted so long as it is not obviously wrong.'" (quoting *Federal Trade Comm'n v.*

*Invention Submission Corp.*, 965 F.2d 1086, 1089 (D.C. Cir. 1992)).  The Sixth Circuit has advised that this deference requires a court to enforce an administrative subpoena when " ' the evidence sought by the subpoena [is] not plainly incompetent or irrelevant to any lawful purpose of the [agency] in the discharge of its duties.' " *Markwood*, 48 F.3d at 977 (quoting *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509 (1943)).

Forge correctly points out that the Sixth Circuit held that courts should " 'weigh the likely relevance of the requested material to the investigation against the burden . . . of producing the material'. " *Doe v. United States*, 253 F.3d at 267 (quoting *EEOC v. Ford Motor Co.*, 26 F.3d 44, 47 (6th Cir. 1994).  But Forge misperceives the nature of the burden to which the court of appeals referred.  The "burden" referenced in these decisions is that contemplated by the Federal Rule of Civil Procedure 26(b)(1) ("whether the burden or expense of the proposed discovery outweighs its likely benefit").  A burden arises when the producing party would be required to expend unwarranted time, resources, and expense collecting and producing the requested material.  That is the very type of analysis the Sixth Circuit used in *Doe v. United States*.  *See* 253 F.3d at 268 (referring to Doe's assertion that he " 'would have to literally put his life on hold and search for papers and documents which stretch ten years into the past[,] [w]ell beyond any statute of limitations" (quoting Doe's Appellate Brief at 21) (emphasis in original)).

-10-

Forge offers nothing to suggest that providing a list of clients' names and addresses, as well as copies of their contracts, is at all burdensome as that term is understood by the Sixth Circuit. Instead, Forge argues that the Court should consider "burden" in the form of embarrassment and interference with client relationships. (*See* ECF No. 15, PageID.89; Hrg Tr. at 16, PageID.168). But Forge is unable to cite to any authority for the proposition that this is the type of burden the Court may consider (*see* Hrg Tr. at 16-17, PageID.168-69), and the undersigned has found none.[3]

The undersigned judicial officer has no difficulty discerning the relevance of the information sought to the Secretary's investigation of potential violations of the FLSA. Forge provides staffing to various clients. That staffing includes day laborers, temporary laborers, and permanent laborers. The relevance of whether any of Forge's clients fall within the statutory definition of "employer," and whether there are any underaged persons filling the staffing positions, is manifest.[4]

---

[3] The undersigned judicial officer is not unsympathetic to the difficulties Forge is likely facing with respect to adverse publicity and the prospect of losing clients. Undoubtedly, many recipients of DOL's subpoenas face similar difficulties. But this Court lacks the discretion to evaluate such extraneous matters. *See, e.g., Markwood*, 48 F.3d at 976 ("[A] district court's role in the enforcement of an administrative subpoena is a limited one.").

[4] Forge acknowledges that a February 25, 2023, New York Times article regarding purported violations of child labor laws quotes a former Forge employee who asserted that one of Forge's clients knowingly employed minors. (*See* ECF No. 15, PageID.89). In fact, it was this article that apparently prompted a number of state and federal investigations. (*See id.*).

3.  *The Information Sought is not Within the Secretary's Possession*

There is no question that the Secretary does not have the client information and contracts at issue here, and Forge has not suggested otherwise. Instead, Forge argues that the Secretary *could* obtain the information she needs by questioning workers "to determine joint-employer status in connection with any work assignment." (ECF No. 15, PageID.98-99). Forge prefers to have the interviews conducted at its offices to minimize potential interference with its client relationships. (*Id.* at PageID.99-101; Hrg Tr. at 30-31, PageID182-83).

Forge's suggested accommodations are not necessarily unreasonable. Perhaps, the Secretary could conduct her investigation as Forge suggests. Unfortunately, as with potential adverse publicity and embarrassment, this issue is beyond the scope of this Court's authority.

4.  *Enforcement of the Subpoenas Does Not Abuse Judicial Process*

Forge's argument that enforcement of the subpoenas at issue here would constitute an abuse of process largely mirrors its burdensomeness argument, which has already been addressed.[5] Similar arguments advanced in support of abusiveness claims have been rejected by courts. *See Benistar Employer Servs.*

---

[5] Forge's bald assertion that the breadth of the subpoenas render them a "fishing expedition" (ECF No. 99) is wholly undeveloped. As such, it is waived. *See McPherson v. Kelsey*, 125 F.3d 989, 996 (6 th Cir. 1997) (" '[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving to the court to put flesh on its bones.' " (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995)).

*Trust Co. v. United States*, Case No. 3:04-cv-2197, 2005 WL 3429423, at *6 (D. Conn. May 12, 2005 ("Simply claiming enforcement of a summons would be onerous and/or have a detrimental effect on a business relationship is insufficient to show bad faith on the part of the [government]."); *Barnoff v. United States*, Case No. 1:97-mc-179, 1997 WL 881206, at *7 (N.D. Ohio Oct. 8, 1997) (rejecting argument that enforcement of a subpoena would constitute and abuse of process because it would damage a customer relationship, and finding that "concerns of damage to [a] banking relationship are insufficient").

Forge has failed to meet its burden of establishing that the enforcement of the subpoenas would constitute an abuse of process. Accordingly, the petition to enforce the subpoenas should be granted.

**Conclusion**

For the foregoing reasons, the undersigned judicial officer recommends that the Secretary of Labor's petition to enforce the two administrative subpoenas *duces tecum* issued to Forge (ECF No. 1) be granted. The undersigned further recommends that the Court order Forge to produce the responsive documents within 21 days of its order. Should the parties have failed to reach a tolling agreement, the undersigned recommends that the Court toll the statute of limitations from March 28, 2023, the return date for the subpoenaed records, until such time as Forge has complied with the Court's order. Finally, the undersigned recommends that the Court order Forge to pay the Secretary's fees and expenses in bringing the instant petition.

-13-

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. ' 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

                                                  Respectfully submitted,

Date: February 23, 2024                  /s/ Phillip J. Green
                                                     PHILLIP J. GREEN
                                                     United States Magistrate Judge